UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANTHONY SEDILLOS,**

    **Plaintiff,**

v.                                                       No. 1:24-cv-00561-JCH-LF

**FRANK BISIGNANO,**
**Commissioner of Social Security,**[1]

    **Defendant.**

## AMENDED MEMORANDUM OPINION AND ORDER

**I.**    **Introduction**

This matter is before the Court on Plaintiff Anthony Sedillos's *Motion to Reverse and Remand to Agency with Supporting Memorandum* ("Motion") **(ECF No. 15)**. Plaintiff alleges he became disabled on August 21, 2020, at age 35, because of post-traumatic stress disorder, anxiety, depression, hypertension, arthritis in both hands, and bipolar disease. Admin. R. 285, 320, ECF No. 11 (hereinafter "AR"). Plaintiff filed a Title II application for disability insurance benefits on November 6, 2020, and a Title XVI application for supplemental security income on December 7, 2020. AR 285, 292.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025, and is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

Plaintiff's applications were initially denied in March 2021, and denied upon reconsideration in June 2022. AR 159, 164, 176, 179. Plaintiff filed a request for hearing in July 2022, and Administrative Law Judge ("ALJ") Leppala held a hearing on March 29, 2023. AR 186, 38. The ALJ issued his unfavorable decision on May 23, 2023. AR 15. Plaintiff requested review of the decision, but his request was denied in December 2023. AR 5. After receiving more time to file a civil action in April 2024, Plaintiff filed the instant action on June 4, 2024, and this Motion on November 26, 2024. AR 1; Complaint 1, ECF No. 1; Mot. 1, ECF No. 15 (hereinafter "Mot."). Defendant, the Commissioner of the Social Security Administration ("SSA") ("Commissioner"), filed a brief in response to the Motion on February 24, 2025 **(ECF No. 21)**, and on March 10, 2025, Plaintiff filed a reply in support of the Motion **(ECF No. 22)**.

Plaintiff argues first that the ALJ's reliance upon the prior psychological administrative findings is error because the findings do not constitute substantial evidence, and second that the ALJ picked and chose among moderate mental limitations noted by the psychological consultants.[2] Mot. 1. Having meticulously reviewed the entire record and the relevant law, the Court finds that the ALJ did not err by relying on the psychological administrative findings and did not fail to adequately address Plaintiff's moderate limitations. The Court will therefore **DENY** Plaintiff's Motion.

II. **Applicable Law**

  A. **Disability Determination Process**

---

[2] Plaintiff also argued that the ALJ erred by relying on Dr. Spoor's prior administrative medical filings because he claimed that Dr. Spoor reviewed the concurrent claim only prior to the date last insured. Mot. 24. However, Plaintiff has since conceded this argument, recognizing that he was mistaken about the date last insured. *See* Resp. 19, ECF No. 21 (hereinafter "Resp."); Reply 8, ECF No. 22 (hereinafter "Reply"). Accordingly, the Court does not address this argument.

The SSA considers an individual disabled if the individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To make this determination, the SSA employs a five-step Sequential Evaluation Process ("SEP"). 20 C.F.R. § 404.1520; *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). The process requires an ALJ to determine whether: (1) the plaintiff was engaged in substantial gainful activity during the alleged period of disability; (2) the plaintiff has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement; (3) any such impairment meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) the plaintiff can return to her past relevant work; and, if not, (5) the plaintiff is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520. If the plaintiff's impairment meets or equals the severity of a listed impairment, as outlined in SEP step three, then the impairment is conclusively presumed disabling. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, (1987); *Fischer-Ross*, 431 F.3d at 731. If, however, the plaintiff is not considered disabled at SEP step three but has established a prima facie case of disability under SEP steps one, two, and four, then the burden shifts to the SSA at SEP step five to show the plaintiff can perform other work in the national economy considering the plaintiff's RFC. *Bowen*, 482 U.S. at 146, n.5; *Fischer-Ross*, 431 F.3d at 731.

State agency psychological consultants ("psychological consultants") can be utilized throughout the SEP to review a plaintiff's records and submit opinions on a plaintiff's medical condition. *See* 20 C.F.R § 404.1616. Although ALJs are not bound by these opinions, they must

consider them and explain the weight given to them in their decisions. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("It is the ALJ's duty to give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions.").

Plaintiff's arguments largely center around evaluation techniques utilized by psychological consultants at SEP steps two and three, and four and five. "The [Psychiatric Review Technique ("PRT")] is used to assess mental impairments for purposes of steps two (identifying severe impairments) and three (rating severity for the listings)." *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013); *see generally* 20 C.F.R. §§ 404.1520a, 416.920a. If it is determined that a plaintiff has a medically determinable impairment, then the degree of functional limitation resulting from the impairment is determined by rating the impact of the limitation on four broad functional areas: the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself (the "B and C criteria"). 20 C.F.R. §§ 404.1520a, 416.920a.

The Mental Residual Functional Capacity ("MRFC") assessment, on the other hand, "addresses twenty specific mental functions relevant to the vocational determinations required at steps four and five." *Lull*, 535 F. App'x at 686. While the limitations identified in the B and C criteria are used to rate the severity of mental impairment(s) at steps 2 and 3 of the SEP, the MRFC assessment used at steps 4 and 5 generally requires a more detailed assessment by itemizing various functions contained in the four broad categories located in the B and C criteria of the adult mental disorders listings and summarized on the PRT. *Id.* Psychological consultants use the Mental Residual Functional Capacity assessment form ("MRFCA form") when determining a plaintiff's

MRFC.[3] Program Operation Manual System ("POMS") DI 24510.060(A).[4] Sections I and III of the MRFCA form are relevant here. Section I is essentially a worksheet where a consultant records preliminary conclusions about the effect of a plaintiff's impairments on twenty mental function items grouped under the four general areas of mental function. POMS DI 24510.060(B). If a consultant finds that the plaintiff has a moderate limitation in any of the twenty functions, "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III." POMS DI 24510.063(B)(2). Section III is where the medical consultants record their formal narrative MRFC assessments, POMS DI 24510.065(A), and is assessed by adjudicators as such, *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015).

### B. Standard of Review

A federal court's review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In undertaking its review, a court must meticulously review the entire record, but the court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Flaherty*

---

[3] MRFCA forms are completed by psychological consultants electronically. *Ortiz v. O'Malley*, No. 1:22-cv-00660, 2024 WL 278290 at *4 n.8 (D.N.M. Jan. 25, 2024). Before the form was available electronically, consultants used the SSA-4734-F4-SUP form, which was divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). *Id.* Although the electronic versions of these forms no longer have these section labels, parties and courts continue to refer to the checkbox portion of each MRFCA form as "Section I," and the "narrative" portions as "Section III." *Id.* In addition, the instructions contained in Program Operation Manual System ("POMS") DI 24510.060–65 on how to complete SSA-4734-F4-SUP still apply to the electronic form. *Id.*

[4] The POMS is "a set of policies issued by the [SSA] to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

*v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Simply put, courts may not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, the decision must provide the court with "a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). While an ALJ is not required to mention every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and the ALJ's decision must discuss uncontroverted evidence that the ALJ chose not to rely on, as well as significantly probative evidence that the ALJ chose to reject. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Background

#### A. The ALJ's Opinion

At SEP step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2021, and had not engaged in substantial gainful activity since August 21, 2020. AR 20. The ALJ found that Plaintiff had severe impairments of inflammatory arthritis, osteoarthritis, obesity, obstructive sleep apnea, bipolar disorder, depression, intermittent explosive disorder, and post-traumatic stress disorder. AR 21. The ALJ determined that Plaintiff's impairments did not meet or equal in severity any of the listings described in the

6

governing regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21. Accordingly, the ALJ proceeded to SEP steps four and five and found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) "except that he is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks." AR 23. The ALJ further limited Plaintiff to "occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, occasionally balancing, and frequently handling and fingering bilaterally." AR 23.

The ALJ found that Plaintiff had the following MRFC:

> The Plaintiff can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He is limited to occasional interaction with coworkers, supervisors, and the general public.

AR 23. The ALJ determined that while Plaintiff was unable to perform his past work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 29-30. Based on all of the above, the ALJ determined that Plaintiff had not been under a disability within the meaning of the Social Security Act from August 21, 2020, through the date of the decision, May 23, 2023. AR 30.

## B. Relevant Medical Evidence Related to Plaintiff's Ability to Work[5]

### 1. Plaintiff's Testimony

---

[5] Plaintiff only challenges the ALJ's treatment of his mental limitations. Accordingly, this Court does not summarize evidence related to Plaintiff's physical impairments.

At the hearing on March 29, 2023, Plaintiff testified about his depression, anger, insomnia, and schizophrenia. Plaintiff fell into depression after losing his favorite job as an ambulance driver in 2016. AR 51. His mental condition gradually worsened, resulting in Plaintiff checking himself into a behavioral hospital for a week and a half in 2021. AR 52. Plaintiff started taking 12 medications, including medication for schizophrenia and schizoaffective disorder. AR 52. However, on the date of the hearing Plaintiff's conditions had improved to the point that he was only taking four medications, including medications for night terrors and insomnia, in addition to one shot a month for a mood stabilizer. AR 52. Plaintiff noted that the medications reduced the frequency of his night terrors, improved the quality of his sleep, and helped him manage his anger. AR 53-56. Plaintiff testified that prior to his medications, he "couldn't be around people" and his family "hated" to be around him. AR 56. But after starting his medications, Plaintiff testified that he became "a completely different changed person." AR 56. Plaintiff still struggles with residual anger issues, noting that he gets triggered and goes "from 0 to 100." AR 56. However, Plaintiff expressed that these outbursts are not as intense anymore because he is in control and thinks before he acts and speaks. AR 56. Plaintiff plans to continue the medications and counseling for the rest of his life. AR 56-57.

### 2. Prior Administrative Medical Findings

Dr. Kathleen A. Padilla reviewed Plaintiff's record at the initial level on February 25, 2021. AR 97-114. In looking at the "B" criteria, Dr. Padilla found no limitation in Plaintiff's abilities to understand, remember, or apply information. AR 99, 109. She found a moderate limitation in interacting with others; a mild limitation in concentration, persistence, and pace; and a moderate limitation in adapting and managing oneself. AR 99, 109. In MRFC Section I, she found moderate limitations in Plaintiff's abilities to interact appropriately with the general public, to accept

8

instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. AR 104, 114. Based on these findings, Dr. Padilla concluded in her Section III narrative that when Plaintiff is treatment/medication compliant and substance free, he retains the capacity to understand, remember, and carry out simple instructions; attend and concentrate sufficiently to complete a routine workday without significant interruptions from psychologically based symptoms; exercise reasonable judgment; and interact appropriately with coworkers and supervisors on a superficial basis. AR 104, 114.

Dr. Sorenson reviewed the record on the reconsideration level on April 27, 2022. AR 118-51. Regarding the "B" criteria, Dr. Sorenson found that Plaintiff had a mild limitation in his ability to understand, remember, or apply information and to adapt or manage oneself. AR 121, 138, 140. Dr. Sorenson found that Plaintiff had a moderate limitation in his ability to interact with others and to concentrate, persist, or maintain pace. AR 121, 138, 140. In MRFC Section I, Dr. Sorenson found that Plaintiff had moderate limitations in his abilities to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. AR 130-31, 147-48. Dr. Sorenson agreed with Dr. Padilla's Section III narrative that when treatment/medication compliant and substance free, Plaintiff retains the capacity to understand, remember, and carry out simple

9

instructions, attend and concentrate sufficiently to complete a routine workday without significant interruptions from psychologically based symptoms; exercise reasonable judgment; and interact appropriately with coworkers and supervisors on a superficial basis. AR 132, 149.

The ALJ found these administrative findings to be somewhat persuasive as supported by detailed explanations with references to medical and other evidence. AR 28. However, the ALJ did not find these conclusions to be fully consistent with the evidence. AR 28. Accordingly, the ALJ further limited Plaintiff's MRFC finding to make commensurate work-related decisions, deal with occasional changes in a work setting, and occasional interaction with coworkers, supervisors, and the general public. AR 29.

## IV.   Discussion

### A.  The Prior Administrative Findings Do Constitute Substantial Evidence

Plaintiff argues that the prior administrative findings the ALJ considered do not constitute substantial evidence for three reasons: First, because Dr. Padilla conflated the PRT with the MRFC determination; second, because Dr. Padilla and Dr. Sorenson both relied on non-record evidence and pre-alleged onset data evidence in formulating their opinions; and third, because Dr. Padilla and Dr. Sorenson both used the phrase "when treatment/medication compliant and substance free," in their MRFC Section III narratives The Court will address each argument in turn.

#### 1.  Dr. Padilla Did Not Conflate the PRT and MRFC and Her Opinion Can Be Considered Substantial Evidence

Plaintiff argues that Dr. Padilla conflated the PRT and MRFC when she used the PRT additional explanation to support her MRFC Section III narrative. Mot. 20. Plaintiff contends that Dr. Padilla's use of the PRT additional explanation narrative in her MRFC Section III narrative

10

equates to a haphazard conflation of different types of evaluations that are used at different stages of the SEP. *Id.* (quoting *Milner v. Berryhill*, No. 16-cv-1050, 2018 WL 461095, at *12 (D.N.M. Jan. 18, 2018)). Accordingly, Plaintiff argues that Dr. Padilla's opinion cannot be considered substantial evidence.[6] *Id.*

Plaintiff cites to *Milner v. Berryhill* in support of his argument. 2018 WL 461095, at *12. In that case, the court held that the ALJ erred by relying on a psychological consultant's MRFC opinion where the psychological consultant's MRFC Section III narrative was inconsistent with his MRFC Section I limitations and lacked adequate explanations accounting for the inconsistencies. *Id.* For example, instead of describing the degree and extent of the Section I limitations in Section III, the doctor merely wrote in Section III "see PRT." *Id.* And the limitations assessed in the PRT directly contradicted the limitations assessed in MRFC Section I. *Id.* This opinion, the court concluded, could not be considered substantial evidence that supported the ALJ's assessment of the plaintiff's MRFC because of the inconsistencies and because the limitations determined as part of the PRT should not be considered limitations with respect to the plaintiff's MRFC. *Id.*

---

[6] In his reply, Plaintiff adds an argument that the ALJ conflated the PRT and MRFC when the ALJ listed the "B" criteria and not the MRFC findings when summarizing Dr. Padilla's findings in his decision. Reply 3. Plaintiff waived this argument by only mentioning it for the first time in his reply. *See Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008). However, the argument would still fail even if not waived. While the ALJ does summarize Dr. Padilla's "B" criteria limitations in his opinion, he also included Dr. Padilla's MRFC Section III narrative upon which he based his own MRFC finding. AR 28. And plaintiff does not cite any authority or make any argument that including a doctor's "B" criteria findings in a summary of their evaluation constitutes harmful error on the part of the ALJ. *See Kidd v. Comm'r, SSA*, No. 21-1363, 2022 WL 3041097, at *2 (10th Cir. Aug. 2, 2022) (noting that burden to show harmful error is on party challenging SSA's determination). The ALJ's MRFC determination is well reasoned and properly addresses both Dr. Padilla and Dr. Sorenson's findings. *See infra* Section IV.B.

This case is distinguishable, however, because the opinions given in Dr. Padilla's MRFC Section III narrative are consistent with her Section I limitations. In completing Section I, Dr. Padilla found Plaintiff had moderate limitations in his abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. AR 104, 114. Accordingly, Dr. Padilla's MRFC Section III narrative found that Plaintiff retained the capacity to "understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms; exercise reasonable judgment; [and] interact appropriately with coworkers; supervisors on a superficial basis," a finding that is consistent with the Section I limitations. AR 104, 114. And while Dr. Padilla uses similar narratives in her PRT Additional Explanation and MRFC Additional Explanation sections, Plaintiff points to no authority saying this practice renders the opinion entirely unreliable, especially when the ultimate MRFC conclusions and limitations align.

Further, Dr. Padilla's opinion was only one piece of evidence that the ALJ considered, and the ALJ noted that he found it "somewhat persuasive," assessing additional limitations in Plaintiff's MRFC that he felt better captured the moderate limitations found by Dr. Padilla and Dr. Sorenson. AR 28-29. This court will not reweigh the evidence or substitute its judgment for that of the Commissioner's. *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007). Accordingly, the ALJ did not err by relying on Dr. Padilla's opinion and Plaintiff's argument will be rejected.

## 2. Dr. Padilla and Dr. Sorenson Did Not Rely on Non-Record Evidence and Pre-Alleged Onset Data Evidence in Formulating Their Opinions

Next, Plaintiff argues that Dr. Padilla and Dr. Sorenson's opinions do not constitute substantial evidence because they relied on non-record evidence and pre-alleged onset date evidence, particularly the consultative examination of Dr. LaCourt from October 4, 2018, in their assessments. Mot. 20. Plaintiff contends that the use of this non-record examination violates principles of fundamental fairness. *Id.*; *see Myers v. Astrue*, 870 F. Supp. 2d 1164, 1170 (D. Colo. 2012).

The Court will decline to remand on this issue as Plaintiff's argument is without merit. There is no indication anywhere in the ALJ's opinion that he relied on Dr. LaCourt's evaluation. *See generally* AR 18-31. While Dr. LaCourt's evaluation was available to Dr. Padilla and Dr. Sorenson, it was only one evaluation out of 13 pieces of evidence that Dr. Padilla reviewed, *see* AR 100-01, and there is no indication that Dr. Sorenson relied on it in his evaluation, *see generally* AR 118-51. And both doctors noted that the evaluation represented overestimates of Plaintiff's limitations, potentially due to Dr. LaCourt's brief treating relationship with Plaintiff. AR 101-02, 111-12, 125, 142. Moreover, even if Dr. Padilla and Dr. Sorenson did rely on Dr. LaCourt's examination, the ALJ only found Dr. Padilla and Dr. Sorenson's opinions "somewhat persuasive," among the entire record of additional evidence that he reviewed. AR 28.

Plaintiff compares this case to *Myers v. Astrue*, where the court found that the ALJ improperly relied on non-record evidence and pre-application time-period evidence while restricting the Plaintiff's testimony to the time period of the second application. 870 F. Supp. 2d at 1170. The court deemed this improper and required remand and reopening of the record to include all evidence relied on by the ALJ and to allow the Plaintiff to introduce evidence from the earlier application period. *Id.*

In making that determination, however, the court found that it was "clear the ALJ improperly relied on a statement made by Dr. Kennedy outside of the record in finding that [Plaintiff] lacked credibility." *Id.* The court also noted that the ALJ relied on treatment notes from the Plaintiff's first application in assessing the Plaintiff's overall level of functioning. *Id.* This situation is not present in Plaintiff's case. As noted earlier, there is no indication that the ALJ relied on Dr. LaCourt's examination at all. *See generally* AR 18-31. In fact, there is no indication that the ALJ relied on *any* pre-alleged onset date evidence. *See generally* AR 18-31. And even if Dr. Padilla and Dr. Sorenson considered the evaluation as one piece of evidence, the ALJ considered these opinions "somewhat persuasive," AR 28, and it is not this Court's job to reweigh evidence. *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007). Accordingly, the Court will not remand on this issue.

### 3. The ALJ Did Not Err by Relying on Dr. Padilla and Dr. Sorenson's Opinions that Included the Phrase "When treatment/medication compliant and substance free…"

Finally, Plaintiff argues that Dr. Padilla and Dr. Sorenson's opinions do not constitute substantial evidence because both doctors began their MRFC Section III narratives with "[w]hen treatment/medication compliant and substance free. . . ." Mot. 21. Plaintiff takes issue with the use of this statement because there is no evidence in the file that he used substances during the period in question. *Id.* Further, he notes that his doctors never deemed him noncompliant with his medications, even despite Plaintiff needing to change his medications for varying reasons throughout the time period. *Id.* at 21-22. Accordingly, Plaintiff asserts that because there was no evidence of substance abuse or noncompliance with medication in his file, these statements must

14

have been based on evidence in his prior file. *Id.* at 22. Plaintiff argues that this is harmful because the ALJ took these opinions into account, finding them "somewhat persuasive." AR 28-29.

However, there is nothing in the ALJ's opinion that mischaracterizes Plaintiff's substance use or medication compliance to suggest that the ALJ understood these statements to mean that Plaintiff had an issue with substance abuse or medication noncompliance. *See generally* AR 18-31. Plaintiff actually points to the fact that there is a finding in the record of "no evidence of any substance disorder," which also would have been considered by the ALJ. AR 115. Plaintiff only speculates about Dr. Padilla and Dr. Sorenson's analyses to support the claim that Plaintiff's history of substance use was misconstrued and misapplied in the ALJ's determination. And, at the risk of repetition, the ALJ only considered these opinions "somewhat persuasive" in formulating his own MRFC finding. AR 28. Accordingly, the Court will decline to remand on this issue as Plaintiff has not presented enough evidence to convince the Court that Dr. Padilla and Dr. Sorenson's opinions should not be considered substantial evidence. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (noting that substantial evidence is lacking when there is "conspicuous absence of credible choices" or "no contrary medical evidence").

### B. The ALJ Did Adequately Address Plaintiff's Moderate Mental Limitations in the MRFC

Next, Plaintiff argues that the ALJ failed to properly consider Plaintiff's moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors by finding that he could respond appropriately to supervision, coworkers, and work situations and limiting him to only occasional interaction with coworkers, supervisors, and the general public. Mot. 22. The Court finds that the ALJ did adequately address this moderate limitation and will decline to remand on this issue.

More context surrounding the MRFC evaluation process is necessary before addressing Plaintiff's argument. Both Dr. Padilla and Dr. Sorenson used a MRFCA form to assess Plaintiff's MRFC. AR 103-04; AR 113-14; AR 130-32; AR 147-49; POMS DI 24510.060(A). Even though the Section III narrative is considered the formal MRFC assessment, the ALJ must address all of a consultant's findings, including moderate Section I findings. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015); *see Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158-64 (D.N.M. 2016). Limitations found in Section I of an MRFCA are "evidence that the ALJ must consider in making . . . independent findings." *Silva*, 203 F. Supp. 3d. at 1159. An ALJ can rely exclusively on a Section III narrative only if it "adequately encapsulate[s]" the moderate limitations found in Section I, *Carver*, 600 F. App'x at 619, meaning Section III "does not contradict any Section I limitations and describes the effect each Section I limitation would have on the [Plaintiff's MRFC]." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015); *Ortiz v. O'Malley*, No. 1:22-cv-00660, 2024 WL 278290, at *4 (D.N.M. Jan. 25, 2024).

If an ALJ does not clearly account for a Section I limitation, this Court must determine whether the corresponding Section III narrative "adequately encapsulate[s]" that limitation. *Carver*, 600 F. App'x at 619. "If Section III does not adequately encapsulate the omitted limitation and the ALJ did not explain the omission, the ALJ has committed legal error requiring remand." *Ortiz*, 2024 WL 278290, at *4 (citing *Parker v. Comm'r, SSA*, 772 F. App'x 613, 615 (10th Cir. 2019) ("If the agency had decided to omit particular limitations embodied in . . . medical opinions, the agency needed to explain the omissions.")).

Both Dr. Padilla and Dr. Sorenson found that Plaintiff had a moderate limitation in his "ability to accept instructions and respond appropriately to criticism from supervisors" in Section I. AR 104, 114, 131, 148. In their Section III narrative conclusions, both doctors limited Plaintiff

16

to work that required him to "interact appropriately with coworkers; supervisors on a superficial basis." AR 104, 114, 132, 149. The ALJ found that Dr. Padilla and Dr. Sorenson's limitations did not adequately account for the moderate limitation in the Plaintiff's ability to interact with others, so he further limited Plaintiff's work interactions to "occasional interaction with coworkers, supervisors, and the general public." AR 28-29. Remand is not required. Both doctors accounted for the moderate limitation in their Section III narratives, albeit not to the extent the ALJ thought appropriate. Accordingly, the ALJ limited the Plaintiff even further to better account for the moderate limitation. The ALJ has not committed any legal error.

*Carver v. Colvin*, 600 F. App'x 616 (10th Cir. 2015) is a helpful comparison. There, the doctor found a moderate limitation in plaintiff's ability to accept instructions and respond appropriately to supervisor criticism in Section I. *Id.* at 619. The court found that the doctor's Section III statements that plaintiff could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision," were the "functional manifestations of that Section I moderate limitation." *Id.* And when the plaintiff argued that the ALJ erred by not including the word "superficially" in describing plaintiff's ability to interact with supervisors, the court held that the ALJ sufficiently captured the essence of the Section III limitations by finding that plaintiff could "understand, remember, and carry out simple instructions in a work-related setting" and could "interact with co-workers and supervisors, under routine supervision." *Id.* at 620. To find otherwise, the court stated, "would parse the ALJ's language too finely." *Id.*; *see also C.M.M. v. Comm'r, SSA*, No. 22-cv-00908, 2024 WL 643040, at *4 (D. Colo. Feb. 15, 2024) (finding that ALJ's Section III MRFC limitation of "occasional work interactions with coworkers and supervisors" was consistent with doctor's opinion that plaintiff

17

"cannot work closely with supervisors or coworkers" but can "accept supervision and relate to coworkers if contact is not frequent or prolonged").

Plaintiff cites to *Gomez v. Berryhill* for the proposition that a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors is not properly accounted for by a finding that the Plaintiff can handle occasional interaction with supervisors, coworkers, and the general public. No. 17-cv-155, 2018 WL 2973400, at *12 (D.N.M. June 13, 2018). The court found that "[l]ess interaction does not necessarily make for appropriate interaction, and in light of the overwhelming evidence regarding [plaintiff's] anger management problems and resulting behavioral extremes, the Court is not persuaded that the ALJ's [MRFC] is supported by substantial evidence." *Id.* However, the key difference between this case and *Gomez* is the *overwhelming evidence* of the *Gomez* plaintiff's anger management and behavioral extremes. Here, the medical records and Plaintiff's own testimony reflect someone who is making consistent, gradual improvement in controlling their anger and emotional distress. For example, Plaintiff's mental impairments are stable on medication, Plaintiff does not require inpatient psychiatric treatment, and Plaintiff is able to engage in activities like working part-time at McDonald's. AR 27. Plaintiff testified that the medications have helped him become a "changed person" and that he is able to think before he acts and speaks. AR 56. Additionally, many of his treatment notes indicate that while he was still dealing with depression and anxiety, he often presented with a euthymic mood and normal affect and was reporting improved anger and personal relationships with medication and counseling. AR 26-27 (citing AR 962, 1140, 1123, 1161, 1193, 1315).

In *Gomez*, there was no discernable improvement in the plaintiff's mental conditions across the medical evidence reviewed. *Compare Gomez*, 2018 WL 2973400, at *4 (earliest medical record from 2010 diagnosing plaintiff with depressive disorder and noting that she had trouble controlling

her anger and was facing battery and other criminal charges), *with id.* at *5-7 (medical records from 2013 diagnosing plaintiff with depressive disorder and bipolar disorder and noting that plaintiff's anxiety was getting worse, she was experiencing panic attacks, was easily angered, had difficulty sleeping, and was experiencing road rage). The positive improvement Plaintiff has shown in this case, on the other hand, suggests that the ALJ's limitation to "occasional interaction" is based on substantial evidence.

Finally, Plaintiff cites to *Chee v. Berryhill*, No. 16-cv-1105, 2017 WL 4162263 (D.N.M. Sept. 18, 2017). In that case, the court found that the reviewing doctors' statements in their Section III narratives that the plaintiff could interact "adequately" with supervisors failed to describe the effects of their Section I findings that plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at *6. However, the issue in that case arose due to inconsistencies between the reviewing doctors' Section I and Section III findings, that is, the finding that plaintiff could interact "adequately" with supervisors did not capture her limitation in accepting instructions and respond to criticism. *Id.* Here, Dr. Padilla and Dr. Sorenson did adequately account for the Section I limitation in their Section III narratives by limiting Plaintiff to interactions with coworkers and supervisors on a *superficial* basis. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (finding that Section III statements that plaintiff could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision," were functional manifestations of Section I moderate limitation in ability to accept instructions and respond appropriately to supervisor criticism). And an ALJ may rely exclusively on a Section III narrative if it "adequately encapsulates" the moderate limitations found in Section I. *Id.* Dr. Padilla and Dr. Sorenson's Section III narratives adequately encapsulated the moderate limitations found in Section I, unlike the scenario in *Chee*. Even so, the

ALJ only found their limitations somewhat persuasive and limited Plaintiff even further to better account for the moderate limitation. Accordingly, the ALJ did not fail to properly consider Plaintiff's moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors, and the Court will decline to remand on this issue.

V.   **Conclusion**

For the reasons stated above, Plaintiff's *Motion to Reverse and Remand to Agency with Supporting Memorandum* **(ECF No. 15)** is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE